# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

TAWNYA RENEA MCGUIRE,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO.: 5:17-cv-70

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Richard Furcolo ("the ALJ" or "ALJ Furcolo") denying her claim for a period of disability and disability insurance benefits, and Supplemental Security Income. (Docs. 12, 16.) Plaintiff urges the Court to vacate the ALJ's decision and remand the matter for further administrative proceedings, including, but not limited to, a *de novo* hearing and decision. (Id.) Defendant asserts that the Commissioner's decision should be affirmed. (Doc. 15.) For the reasons which follow, I **RECOMMEND** that the Court **AFFIRM** the Commissioner's decision and **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case.

## BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits as well as Supplemental Security Income in April 2014, alleging disability beginning on August 31, 2010. (Doc. 11-2, p. 10.) After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On March 10, 2016, ALJ Furcolo conducted a hearing in Waycross, Georgia, at which Plaintiff, who was represented by counsel, appeared and testified.

(Id.) Kim E. Bennett, a vocational expert, also appeared at the hearing. (Id.) ALJ Furcolo found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act"), 42 U.S.C. §§ 301 *et seq*. (Id.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Id. at p. 2.)

Plaintiff, born in 1973, was forty-two (42) years old when ALJ Furcolo rendered his decision. (Doc. 12, p. 2.) Plaintiff graduated high school but testified she received special education classes due to dyslexia. (Doc. 11-2, p. 15.) Plaintiff last worked in 2010, and her past relevant work experience includes work as a cashier, fast food worker, short order cook, and food sales clerk. (Id. at pp. 15, 17.)

## DISCUSSION

### I.   The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments as defined by the "severity regulation." 20 C.F.R. §§ 404.1520(c), 416.920(c); Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is considered severe, then the evaluation proceeds to Step Three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations ("the Regulations") and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step. At Step Four, a determination is made as to whether the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e); Yuckert, 482 U.S. at 141; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013) (per curiam). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Stone, 503 F. App'x at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the

national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g); Yuckert, 482 U.S. at 142.

In the instant case, ALJ Furcolo followed this sequential process to determine that Plaintiff had not engaged in substantial gainful activity since August 31, 2010, the application date. (Doc. 11-2, p. 12.) At Step Two, the ALJ determined that Plaintiff had a spine disorder and osteoarthritis, both considered "severe" impairments under the "severity regulation," 20 C.F.R. §§ 404.1520(c), 416.920(c). (Id. at pp. 12–13.) At the next step, the ALJ determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment under the Regulations. (Id. at pp. 13–14.) After considering Plaintiff's symptoms and the evidence of record, ALJ Furcolo found that Plaintiff had the RFC to perform light work, except that she can frequently climb stairs, kneel, crouch, and crawl, but only occasionally climb ladders and stoop. (Id. at pp. 14–16 (citing 20 C.F.R. §§ 404.1567(b), 416.967(b)).) At Step Four, ALJ Furcolo found Plaintiff capable of performing the full range of her past relevant work. (Id. at p. 17.) The ALJ noted her previous jobs of cashier, fast food worker, short order cook, and food sales clerk did not require performance beyond Plaintiff's light work RFC. Id. (citing 20 C.F.R. § 404.1565, 416.965).) As such, ALJ Furcolo did not proceed to the fifth step and concluded Plaintiff was not disabled within in the meaning of the Act from August 31, 2010, though the date of his decision, March 30, 2016. (Id.)

## II.    Issues Presented

Plaintiff presents two enumerations of error. Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly rejected Dr. Nishi Agarwal's opinion in favor of the State Agency physicians' opinions. (Doc. 12, pp. 1, 8–

4

11). Plaintiff also contends the ALJ erred by failing to include mental limitations in her RFC, despite acknowledging the she suffers from an affective disorder. (Id. at pp. 1, 11–13.)

### III. Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a mere scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210 (citation omitted). In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply

correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27TGW, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

## IV. Whether the ALJ's RFC Finding is Erroneous for Accepting the Opinions of State Agency Physicians and Rejecting the Opinion of Dr. Agarwal

Plaintiff asserts that the RFC assessment is erroneous because ALJ Furcolo only afforded some weight to Dr. Agarwal's opinion without sufficient explanation for doing so. (Doc. 12, p. 8.) Plaintiff contends the ALJ's decision lacked substantial evidence and does not comport with the case record. (Id. at pp. 8, 9–10.) Finally, Plaintiff argues that opinions of non-examining State Agency physicians cannot support the RFC when they are inconsistent with examining sources such as Dr. Agarwal. (Id. at pp. 8, 11.)

Defendant responds that the ALJ properly considered medical source opinions in assessing Plaintiff's RFC. (Doc. 15, p. 3.) Defendant contends Dr. Agarwal failed to support or explain his opinions with evidence and that his opinions are inconsistent with record as a whole. (Id. at pp. 5–8.) Additionally, Defendant argues objective medical findings and other substantial evidence supports the ALJ's decision to give significant weight to the State Agency physicians when discounting Dr. Agarwal's opinion. (Id. at pp. 8–10.)

Plaintiff replies that Dr. Agarwal's opinion was supported by her own observations of Plaintiff's motion and pain, that Dr. Thomas Lawhorne's records do nothing to discredit Dr. Agarwal's opinion, and that evidence shows Plaintiff suffers from multilevel degenerative disc disease. (Doc. 16, pp. 1–3.) Plaintiff also notes that Defendant failed to rebut the ALJ's alleged error in relying on the State Agency physicians. (Id. at p. 3.)

A plaintiff's RFC is the most that he or she can still do despite his or her limitations and is based on all relevant evidence of record. 20 C.F.R. §§ 404.1545(a), 416.945(a). An RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. SSR 96-8p, 61 Fed. Reg. 34,474 (July 2, 1996). "An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability." Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007). Further, [t]he opinions of nonexamining, reviewing physicians, . . . when contrary to those of [] examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (citation omitted). However, the ALJ may reject any medical opinion if the evidence tends toward a contrary a conclusion, and ultimately, the final determination of a plaintiff's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d); Sryock v. Heckler, 764 F.2d 835, 835 (11th Cir. 1985) (citations omitted).

In determining Plaintiff's light work RFC, ALJ Furcolo stated that he considered the opinion evidence of record in accordance with applicable Regulations. (Doc. 11-2, p. 14 (citations omitted).) The ALJ accurately reviewed Dr. Agarwal's findings from her August 15, 2014 consultative examination of Plaintiff and concluded that her opinions and findings were due "some weight," but he determined Dr. Agarwal's opinion that Plaintiff could only lift and carry less than ten pounds was not supported by objective findings and due only "minimal weight." (Id. at p. 16.) As to the State Agency physicians, ALJ Furcolo gave "significant weight" to their assessments and conclusion that Plaintiff was capable of a limited range of light work, despite their nonexamining status, because their conclusion was consistent with other

evidence. (Id.) Thus, the question is whether substantial evidence of record is consistent with or contrary to Dr. Agarwal's opinion that Plaintiff is incapable of lifting ten or more pounds. After reviewing the record, the Court finds there is considerably "more than mere a scintilla" of evidence to support the ALJ's decision to discount Dr. Agarwal's opinion and credit the State Agency physicians' opinion.

To begin, as the ALJ indicated, Dr. Agarwal's own objective findings that Plaintiff has normal, 5/5 strength in both her right and left upper extremities as well as normal grip strength, (doc. 11-8, p. 5), directly contradict her opinion that Plaintiff can only lift and carry less than ten pounds, (id. at p. 10). Similarly, Dr. Agarwal found no swelling, scarring, or deformity in Plaintiff's neck or back and only found minimally[1] decreased range of motion in her neck, back, and shoulders. (Id. at pp. 3–5, 9–10.) These unremarkable findings militate against Dr. Agarwal's opinion that Plaintiff is severely limited in her ability to lift and carry objects. Further, while Plaintiff stated that she experienced pain when, among other things, squatting, stopping, walking, and picking up objects, Dr. Agarwal found that she had a normal gait and station and was able to ambulate without an assistive device. (Id. at pp. 5, 9–10.) These findings, which are generally inconsistent with Dr. Agarwal's challenged opinion, provided ALJ Furcolo substantial evidence by which to discount Dr. Agarwal's conclusion that Plaintiff could not lift or carry more than ten pounds.[2] See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2001) (ALJ has "good cause" to discount a doctor's opinion where it is

---

[1] Plaintiff takes issue with Defendant's characterization of her shoulder range of movement limitations as "minimal" and stresses that Dr. Agarwal found limitations in the "*entirety*" of her neck, back, and shoulders. (Doc. 16, p. 2.) While it is certainly true that Dr. Agarwal found limitations in the entirety of these areas, it is equally true that Plaintiff's limitations were minimal, as none of them exceeded a 20% limitation in range of movement. (See Doc. 11-8, p. 3.)

[2] What is more, Dr. Agarwal also opined Plaintiff would be able to use her upper extremities for "reaching, pushing, pulling, grasping, and fingering to carry out activities of daily living." (Id. at p. 6.)

inconsistent with the doctor's own records). This remains true even if other evidence of record supports Dr. Agarwal's conclusion.[3] See Dyer, 395 F.3d at 1210 (if there is substantial evidence, courts must affirm even if evidence preponderates against Commissioner's factual findings).

Moreover, although they were not examining consultants, the State Agency physicians expressly reviewed Dr. Agarwal's opinion, (doc. 11-3, pp. 26–27, 39–40), and found it unsupported by objective findings, (id. at pp. 32, 34, 45, 47). They concluded Plaintiff could lift or carry up to twenty pounds occasionally and ten pounds frequently. (Id. at pp. 33, 46.) In other words, the State Agency physicians, like the ALJ, reviewed Plaintiff's medical evidence of record and determined that the objective findings showed she could lift more than ten pounds. Thus, contrary to Plaintiff's arguments, ALJ Furcolo did not discount Dr. Agarwal's opinion simply because the State Agency physicians did so but because the objective evidence showed her opinion to be a dubious proposition. While Plaintiff is correct that the opinions of the nonexamining State Agency physicians, alone, do not constitute substantial evidence to discount the examining Dr. Agawarl's opinion, Plaintiff misconstrues the ALJ's decision in this respect. The record is clear that ALJ Furcolo had substantial evidence in the form of objective findings,

---

[3] In this respect, Plaintiff points to three sets of evidence: (1) Dr. Agarwal's own observations and findings, which the Court has already shown are not fully consistent with her opinion at issue; (2) imaging that shows Plaintiff suffers from multiple degenerations throughout her spinal region; and (3) records from Drs. Andrew B. Pandya and Thomas Lawhorne. (Doc. 12, pp. 9–10.) It is undisputed that Plaintiff suffers from degenerative changes in her spine. Indeed, ALJ Furcolo determined Plaintiff's spine disorder was a severe impairment under the Regulations and discussed her spinal complications throughout his opinion. (Doc. 11, pp. 12, 15–16.) However, diagnosis of a severe impairment does not dictate a finding of disability or support any specific limitation. See Hutchinson v. Astrue, F. App'x 324, 326 (11th Cir. 2011) ("[P]roof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work.") (citation omitted). Furthermore, neither Dr. Pandya's nor Dr. Lawhorne's records provide substantial evidence to undermine ALJ Furcolo's determination to discount Dr. Agarwal's opinion. Dr. Pandya found Plaintiff's upper body strength to be 4 out of 5 and appreciated only "slight weakness." (Doc. 11-8, p. 22.) Dr. Lawhorne noted that Plaintiff reported worsening pain after surgical intervention but opined, "I cannot say I am sure what is going on with [Plaintiff]. I do not see any motor deficits or any problems, but her symptoms are worse"; CT myelogram later showed no problems with her surgery. (Doc. 11-9, pp. 2–3.) These findings are hardly the type of substantial evidence necessary to displace the ALJ's decision and may in fact bolster his conclusions.

9

including those of Dr. Agarwal's, which contradicted her own opinion, and those of Drs. Lawhorne and Pandya, to discount Dr. Agarwal's conclusion that Plaintiff could only lift and carry less than ten pounds.[4]

Thus, the record shows that the ALJ had substantial evidence by which to limit the evidentiary weight of Dr. Agarwal's opinion and that he did not do so merely on the opinion of the State Agency opinions. ALJ Furcolo considered all medical source opinions, in light of the medical evidence of record, and made a reasonable determination to accord more weight to the State Agency physicians' opinions. Accordingly, this enumeration of error is without merit.

**IV. Whether the ALJ Erred by Failing to Include Mental Limitations in Plaintiff's RFC When he Acknowledged Plaintiff has an Affective Disorder**

Plaintiff contends the ALJ Furcolo erred when he determined Plaintiff's RFC did not require any mental limitations on her ability to do work. (Doc. 12, pp. 11–12.) Plaintiff argues that the ALJ must account for functional limitations caused by non-severe impairments when formulating an RFC and that the ALJ failed to do so here, despite acknowledging that Plaintiff suffers from a medically determinable affective disorder. (Id.) Plaintiff asserts remand is warranted so that the ALJ can properly consider the impact of Plaintiff's affective disorder on her ability to perform work. (Id. at p. 13.)

Defendant responds, rather curiously,[5] that Plaintiff "failed to meet her burden of proving that she had a severe mental impairment." (Doc. 15, p. 10.) Defendant argues the evidence of

---

[4] To be sure, there are other objective findings that undermine Dr. Agarwal's August 2014 opinion than those discussed above. For example, in February 2015, Plaintiff presented for a physical exam before Dr. Lawhorne and PA Burke where they found she had maintained muscle mass, 5/5 strength in all motor groups and in her grip, and age-appropriate range of motion in all four extremities. (Doc. 11-9, pp. 6–7.) These objective findings do not comport with Dr. Agarwal's opinion and provide more substantial evidence for the ALJ to discount it.

[5] Plaintiff neither argued the ALJ erred in his "severity" finding nor that her affective disorder was a severe mental impairment. (See Docs. 12, 16.)

record fails to show Plaintiff suffers from a mental impairment that would require work-related limitations. (Id. at pp. 11–13.) Further, Defendant contends the opinion of Dr. Robbie Ronin, the state psychological consultant, supports the ALJ's treatment of Plaintiff's affective disorder as only a "mild limitation" and that Plaintiff failed to cite any authority that requires the inclusion of work-related mental limitations on an RFC when the mental disorder only causes a "mild limitation." (Id. at pp. 14–15.)

Plaintiff replies that Defendant is "attempt[ing] to shadowbox a severity argument, however, this was not argued in Plaintiff's opening brief." (Doc. 16, p. 3.) Plaintiff contends Defendant's arguments are "irrelevant" because an RFC must consider mental impairments regardless of whether they are determined to be "severe." (Id. at pp. 3–4.) Plaintiff reiterates her contention that "the ALJ erred by finding evidence of mental limitations and subsequently excluding them from the final RFC determination." (Id. at p. 4.)

ALJs are required to assess a plaintiff's mental impairments pursuant to the psychiatric review technique. 20 C.F.R. §§ 404.1520a, 416.920a (2016). Under this technique, a plaintiff's mental impairments and the degree of limitations they cause are assessed across four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id. §§ 404.1520a(c), 416.920a(c). These findings are then used to determine whether a plaintiff has a "severe" or listed mental disorder under the Regulations, id. §§ 404.1520a(d), 416.920a(d), and irrespective of these determinations, the findings are used when assessing a plaintiff's RFC, id. §§ 404.1545(a)(2), 416.945(a)(2). If the ALJ determines a plaintiff's mental impairment causes limitations, the ALJ must include these limitations when determining the RFC, unless medical evidence suggests these limitations do not affect one's ability to work. Id. §§ 404.1545(d), 416.945(d); see Winschel, 631 F.3d at 1181.

When challenging the mental limitations included, or not included, in the RFC finding, the plaintiff bears the burden of proving that she has limitations stemming from her mental impairment. Santos v. Soc. Sec. Admin., Comm'r, 731 F. App'x 848, 853 (11th Cir. 2018) (per curiam) (citations omitted).

At Step Two, ALJ Furcolo found Plaintiff to have a medically determinable mental impairment of an affective disorder. (Doc. 11-2, p. 13.) Under the psychiatric review technique, the ALJ determined Plaintiff has a "mild limitation" in the activities of daily living but concluded that this limitation is "due to her physical, not mental condition." (Id.) The ALJ also determined Plaintiff has a "mild limitation" in the area of social functioning because she is able to care for her disabled boyfriend and disabled adult son, as well as grocery shop and care for several pets. (Id.) The ALJ then determined that Plaintiff has "no limitation" in the area of concentration, persistence, or pace because she is able to manage money, drive, and use a computer. (Id.) Lastly, the ALJ found Plaintiff has experienced "no [extended] episodes of decompensation" and has received no significant mental health treatment. (Id.) Because Plaintiff's affective disorder caused no limitation greater than "mild" and she had "no" episodes of decompensation which were extended in duration, ALJ Furcolo concluded Plaintiff's mental impairment was not "severe." (Id.)

As to Plaintiff's light work RFC, which included no additional mental impairment limitations, the ALJ expressly stated that it reflects the degree of mental limitation found at the second step. (Id. at pp. 13, 14.) ALJ Furcolo concluded that Plaintiff's ability to "maintain her house, provide care to two disabled adults, and perform a wide range of activities of daily living including some level of cleaning, cooking, shopping, and driving . . . reflects a significant functional capacity and not an individual unable to sustain regular and continuing work due to

medically determinable impairments." (Id. at p. 16.) Thus, contrary to Plaintiff's arguments, the ALJ considered the possible mental limitations caused by her affective disorder when determining her RFC and reasonably concluded they did not require any further work limitation beyond a light work profile. Substantial evidence supports this conclusion.

First, Plaintiff's own testimony regarding her daily activities and lack of significant mental health treatment support the ALJ's conclusion that no specific mental impairment limitations were warranted in Plaintiff's RFC. 20 C.F.R. §§ 404.1529(c)(3)(i), (v); 416.929(c)(3)(i), (v). Second, Dr. Ronin reviewed the record and determined Plaintiff's affective disorder was non-severe and did not cause "sign[ificant] loss of function due to any mental deficits." (Doc. 11-3, p. 31.) Dr. Ronin opined any limitations would be due to pain and physical complaints. (Id.) Finally, the record is replete with unremarkable objective findings related to Plaintiff's mental condition where examiners noted that she was alert, oriented, pleasant, in a normal mood, and/or displayed good memory and concentration. (See, e.g., Doc. 11-7, pp. 2, 9, 11–12, 15, 20, 71; doc. 11-8, pp. 9–10, 30; doc. 11-9, pp. 14–17; doc. 11-11, pp. 58–59, 66–67.) These findings, in addition to Plaintiff's testimony and Dr. Ronin's opinion, provide substantial evidence to support the ALJ's determination that Plaintiff's RFC did not require specific mental limitations. See Nickles v. Comm'r of Soc. Sec., No. 8:13-CV-395-DNF, 2014 WL 4185342, at *7–8 (M.D. Fla. Aug. 22, 2014) ("[B]ecause the ALJ found that [p]laintiff's mental impairments had no more than a minimal effect on [p]laintiff's functional abilities, and because the ALJ did expressly address [p]laintiff's non-severe mental impairments in his [RFC] assessment, substantial evidence supported the ALJ's evaluation of [p]laintiff's mental limitations.").

Furthermore, Plaintiff failed to carry her burden to show that her affective disorder caused greater limitations than those already encompassed in the light work RFC. Plaintiff cites to no evidence of record which would undermine the ALJ's RFC conclusion as it relates to her mental impairment. Moreover, specific functional limitations stemming from mental impairments are only required to be incorporated into an RFC when the evidence of record supports such a finding. Winschel, 631 F.3d at 1181. Here, the *only* restriction related to Plaintiff's mental impairment was a "mild limitation" in her social functioning. (Doc. 11-2, p. 13.) As shown above, substantial evidence shows Plaintiff's "mild limitation" in social functioning did not warrant specific mental, work-related limits on her RFC, and Plaintiff fails to cite any authority that ratings of mild limitations dictate the inclusion of mental limitations in an RFC finding. Accordingly, this enumeration of error is also without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 29th day of August, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA